PHILLIP A. TALBERT
United States Attorney
JESSICA DELANEY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

**FILED**

**Nov 21, 2024**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL CHARTRAW,<br><br>Defendant. | CASE NO. 2:24-cr-0311 TLN<br><br>18 U.S.C. § 1343– Wire Fraud (12 Counts); 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture |

### I N D I C T M E N T

<u>COUNTS ONE THROUGH TWELVE:</u> [18 U.S.C. § 1343 – Wire Fraud]

The Grand Jury charges: T H A T

DANIEL CHARTRAW,

defendant herein, as follows:

### INTRODUCTION AND BACKGROUND

At all relevant times:

*People and Entities*

1.    DANIEL CHARTRAW was a resident of Placer County, California, who also spent substantial time in San Joaquin County, California.  CHARTRAW represented to others that his business interests were located within San Joaquin County.

2.    Person 1 was an associate of CHARTRAW, who assisted CHARTRAW with marketing

1

1   and other tasks.

2      3.      Person 2 was a relative of CHARTRAW who resided in San Joaquin County, California.

3   CHARTRAW used Person 2's residence and locations around the residence to conduct business

4   activities related to the fraud scheme charged herein.

5      4.      Person 3 was an associate of CHARTRAW and a start up company related investor, who

6   assisted CHARTRAW in his business activities.

7      5.      TDA Global was an entity controlled in whole or in part by CHARTRAW.

8   CHARTRAW began using the name TDA Global in or about the summer of 2021.  TDA Global was

9   first incorporated as a limited liability company in the state of Wyoming in August 2021, using the name

10  of Person 1.  TDA Global was registered as a foreign limited liability company in the state of California

11  in or about November 2021.

12     6.      At times, CHARTRAW and his associates represented in PowerPoint slides and investor

13  pitches that TDA Global was a parent company that oversaw several smaller companies, including a

14  company called Crypto-Pal, LLC.

15     7.      Crypto-Pal, LLC ("Crypto-Pal") was a limited liability company incorporated in the state

16  of Wyoming in or about March 2021.  Person 1, Person 2, and Person 3 appeared on the Crypto-Pal

17  incorporation documents.  Crypto-Pal was controlled in whole or in part by CHARTRAW.  On its

18  website and in investor pitches, Crypto-Pal purported to be a web-based company that assisted with

19  cryptocurrency investments.  Crypto-Pal was registered as a foreign limited liability company in the

20  state of California in or about April 2021.  The address listed on the Crypto-Pal business banking

21  account was in San Joaquin County, California.

22     *Background Regarding Cryptocurrency*

23     8.      Bitcoin was one form of cryptocurrency.  Cryptocurrency was a digital asset which could

24  be transferred over the Internet as a form of value.  Cryptocurrency was not issued by a bank,

25  government, or other company, but instead was controlled through computer software operating via

26  cryptographic technology and a large, decentralized, peer-to-peer network.

27     9.      A cryptocurrency exchange was a business engaged in the purchasing, selling, or trading

28  of cryptocurrency, including for other forms of value such as conventional fiat money (U.S. dollars).  A

1  cryptocurrency wallet, also known as a digital wallet, was an application that allowed cryptocurrency

2  users to store and retrieve their digital assets.  Digital wallets could hold multiple cryptocurrencies.

3  Each digital wallet had a unique cryptographic address which was used to facilitate transactions.

4     10.    Cryptocurrency trading could be managed through bot technology.  A bot was an

5  autonomous program on the Internet.  A cryptocurrency bot could use algorithms to automatically

6  perform cryptocurrency trades without an individual having to access the account and perform the

7  trades.

8                              **SCHEME TO DEFRAUD**

9     11.    Beginning sometime before March 2, 2021, and continuing through in or about February,

10  2022, within the State and Eastern District of California and elsewhere, defendant CHARTRAW

11  knowingly devised, intended to devise, and participated in, a material scheme and artifice to defraud

12  investor-victims of money and property, and to obtain money and property from investor-victims by

13  means of materially false and fraudulent pretenses, representations, and promises.

14     12.    The purpose of the scheme and artifice to defraud was to obtain money in the form of

15  either traditional bank transfers or cryptocurrency transfers from investor-victims.  In some instances,

16  CHARTRAW led investor-victims to believe that their money would be invested into the company of

17  Crypto-Pal, which he asserted could result in equity in the company.  In other instances, CHARTRAW

18  led investor-victims to believe that he would invest their funds into cryptocurrency trading platforms

19  using Crypto-Pal's algorithm to manage the investments.  In all cases, CHARTRAW had the intention to

20  convert the investments to his own personal use rather than for the purposes promised to the investor-

21  victims.

22                              **MANNER AND MEANS**

23     In furtherance of the fraud, CHARTRAW employed the following manner and means, among

24  others:

25     13.    In furtherance of the scheme, CHARTRAW and those working with him or at his

26  direction took steps to create TDA Global and Crypto-Pal.  Although CHARTRAW effectively

27  controlled the entities and represented to investors that he controlled them, the entities were listed in

28  public filings with the names of Persons 1, 2, and 3.

INDICTMENT                                    3

14.    CHARTRAW and others working with him and at his direction, also took steps to create the appearance that TDA Global and Crypto-Pal were legitimate companies.  For example, they established a business email account for TDA Global.  In another example, CHARTRAW and others working with him and at his direction, developed informative materials which described the companies' purported relationship, purpose, organization, and investment model.

15.    CHARTRAW and others working with him and at his direction opened business bank accounts for TDA Global and Crypto-Pal over which CHARTRAW exercised control.

*Startup investor-victims*

16.    In furtherance of his scheme to defraud, CHARTRAW and others working with him and at his direction solicited business contacts to join Crypto-Pal as initial start-up investors.  CHARTRAW communicated with these start-up investor-victims through phone calls and meetings using web-based meeting platforms such as Microsoft Teams and Zoom, as well as through his personal email account.

17.    As part of the investment pitch to prospective start-up investors, CHARTRAW and others represented that Crypto-Pal was working with a brilliant expatriate who had developed a proprietary algorithm capable of making short, medium, and long trades on cryptocurrency trading platforms.

18.    As part of the investment pitch, promotional materials were provided to prospective start-up investors describing the cryptocurrency market and the basic methodology Crypto-Pal employed to obtain high-yield returns on cryptocurrency investments.

19.    In furtherance of the scheme, CHARTRAW made and caused others to make the following materially false and fraudulent statements, among others, to at least some of the start-up investor-victims regarding Crypto-Pal:

  a. That if they invested money into the Crypto-Pal company itself, they could receive equity in the company.

  b. That, if the Crypto-Pal company did not grow as expected, they were guaranteed a return of their investment.

  c. That their investment would be used solely to develop additional technology and to further the business of Crypto-Pal and not for the purchase of real property or personal,

INDICTMENT

4

1       family, or household purposes.

2       20.    When start-up investor-victims decided to invest money, they were directed by Crypto-

3 Pal principals to transfer the money, via wire transfer, to the Crypto-Pal business bank account.

4       21.    In fact, CHARTRAW and the Crypto-Pal principals did not use the money invested into

5 the business bank account to further the business of Crypto-Pal or to assist in the development of

6 cryptocurrency algorithm bots.  Instead, CHARTRAW converted the money to his own use and the use

7 of his associates.  He did this by means that included cash withdrawals, debit card purchases, personal

8 and cashier's checks, and transfers to other bank accounts.  The money was then used for, among other

9 uses, travel, dining, and other personal expenses of CHARTRAW and his associates.

10     *Cryptocurrency trading victims*

11      22.    It was further a part of CHARTRAW's scheme that CHARTRAW solicited new crypto

12 investor-victims to invest money to purportedly be traded by Crypto-Pal using advanced cryptocurrency

13 algorithms.

14      23.    CHARTRAW solicited this second type of investor-victim through existing contacts,

15 including a business contact and a family friend.

16      24.    CHARTRAW communicated with investor-victims through phone calls and meetings

17 using web-based meeting platforms such as Microsoft Teams and Zoom.  CHARTRAW met with at

18 least one potential investor to discuss Crypto-Pal investments at a law office located in Lodi, California.

19 CHARTRAW also communicated with investor-victims through email, using both his personal email

20 account and the TDA Global business email account.

21      25.    In his interactions with crypto investor-victims, CHARTRAW encouraged crypto

22 investor-victims to recruit others to also invest their money using Crypto-Pal's cryptocurrency

23 algorithm.

24      26.    As part of the investment pitch, CHARTRAW and associates provided potential investors

25 with the same promotional materials previously provided to potential start-up investors.

26      27.    CHARTRAW made and caused others to make the following material false and

27 fraudulent statements, among others, to at least some of the investor-victims about Crypto-Pal's

28 cryptocurrency trading platform:

INDICTMENT

    a.   Investor principal would be maintained in a bank account that was not subject to any risk.

    b.   Only profits generated would be subject to loss risk.

    c.   The proprietary algorithm would result in significant gains for investors without risk to investment principal.

    d.   Crypto-Pal had a Friends and Family account which allowed investors to pool investments to result in greater gains.

    e.   Investor money would be used solely for cryptocurrency trading.

    f.   Crypto-Pal would provide regular statements of investment value to the crypto investor-victims.

28.     When a crypto investor-victim made the decision to invest using the cryptocurrency algorithm, CHARTRAW and others directed investor-victims to either transfer money, often by wire transfer, to the Crypto-Pal bank account, or to transfer cryptocurrency to a cryptocurrency wallet that was under CHARTRAW's control. Because crypto investor-victims were directed to wire transfer funds to the Crypto-Pal bank account, those investments were commingled with the funds wired by the start-up investor-victims.

29.     Instead of investing the crypto investor-victims' money as promised, CHARTRAW transferred funds to his bank account, bank cards under his control, or the bank accounts of his friends and family members. He spent investor-victims' money on his own personal expenses, including travel, food, hotels, gas, and airline tickets, among other personal expenses, and on the personal expenses of other members of Crypto-Pal.

30.     In furtherance of the scheme, CHARTRAW made, or caused to be made, materially false and fraudulent lulling statements to both start-up and crypto investor-victims. Among the false lulling statements made by CHARTRAW to investor-victims were statements that their principal had grown in value, that meetings with board members were needed prior to withdrawing funds, that funds were located overseas which delayed their return, and that investor-victims would be able to withdraw money in the future.

31.     These lulling statements were designed to make it appear as though the investments were successful, that CHARTRAW was engaged in a lawful and legitimate business, and that their

1    investments had not been stolen and converted to CHARTRAW's personal use.  This was an integral

2    part of the scheme because it helped CHARTRAW continue the scheme and raise additional funds, as

3    well as helped to prevent or delay investor-victims from reporting suspected fraud to law enforcement

4    authorities.

5         32.    In total, CHARTRAW and those working at his direction stole at least approximately

6    $400,000 in investor funds and converted them to their own use.

7                                        **WIRE TRANSFERS**

8         33.    On or about the dates set forth below, in the State and Eastern District of California and

9    elsewhere, for the purpose of executing the aforementioned scheme and artifice to defraud, and

10   attempting to do so, CHARTRAW did knowingly cause to be transmitted by means of wire

11   communication in interstate and foreign commerce, certain writings, signs, signals, and sounds:

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

| Count | On or About Date | Description of Wire |
|---|---|---|
| 1 | May 7, 2021 | $23,978.61 sent from Investor-Victim-1's Servisfirst Bank Account to Crypto-Pal Bank of America Account ending in 4562 |
| 2 | May 12, 2021 | $80,541.64 sent from Investor-Victim-2's Pinnacle Bank Account to Crypto-Pal Bank of America Account ending in 4562 |
| 3 | May 28, 2021 | $44,000 sent from Investor-Victim-3's Navy Federal Credit Union Business Account to Crypto-Pal Bank of America Account ending in 4562 |
| 4 | June 30, 2021 | $125,000 sent from Investor-Victim-3's Navy Federal Credit Union Account to Crypto-Pal Bank of America Account ending in 4562 |
| 5 | July 6, 2021 | $25,000 sent from Investor-Victim-4's JP Morgan Chase Bank account to Crypto-Pal Bank of America Account ending in 4562 |
| 6 | September 17, 2021 | Email from symbiglobal.com account to Investor-Victim-3 |
| 7 | October 26, 2021 | Email from TDA Global Systems and Docusign to Investor-Victim-5 |
| 8 | October 27, 2021 | Transfer of Bitcoin from Investor-Victim-5's crypto.com wallet to Coinbase wallet ending in fWWm |
| 9 | October 27, 2021 | Transfer of Bitcoin from Investor-Victim-5's crypto.com wallet to Coinbase wallet ending in fWWm |
| 10 | November 3, 2021 | Transfer of Bitcoin from Investor-Victim-5's crypto.com wallet to Coinbase wallet ending in fWWm |
| 11 | November 24, 2021 | Transfer of Bitcoin from Investor-Victim-5's crypto.com wallet to Coinbase wallet ending in Cpa6 |
| 12 | November 24, 2021 | Transfer of Bitcoin from Investor-Victim-5's crypto.com wallet to Coinbase wallet ending in Cpa6 |

All in violation of Title 18, United States Code, Sections 2 and 1343.

FORFEITURE ALLEGATION: [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

      1.      Upon conviction of one or more of the offenses alleged in Counts One through Twelve of this Indictment, defendant DANIEL CHARTRAW shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the following:

          a.      A sum of money equal to the total amount of proceeds traceable to such offenses, for which defendant is convicted.

INDICTMENT

8

2.      If any property subject to forfeiture, as a result of the offenses alleged in Counts One through Twelve of this Indictment, for which defendant is convicted:

       a.      cannot be located upon the exercise of due diligence;

       b.      has been transferred or sold to, or deposited with, a third party;

       c.      has been placed beyond the jurisdiction of the court;

       d.      has been substantially diminished in value; or

       e.      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value of the property subject to forfeiture.

A TRUE BILL.

**/s/ Signature on file w/AUSA**

_____
FOREPERSON

_____
PHILLIP A. TALBERT
United States Attorney

INDICTMENT

9

No. _ _ _ _ _ _ _ _ _ _
2:24-cr-0311 TLN

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

DANIEL CHARTRAW

## I N D I C T M E N T

**VIOLATION(S):**  18 U.S.C. § 1343– Wire Fraud (12 Counts);
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

*A true bill,*   **/s/ Signature on file w/AUSA**

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreman.*

*Filed in open court this* _ _ 21st _ _ _ _ _ _ _ _ _ *day*

*of* _ November _ _ _ _ , *A.D. 20* 24 _ _

_ _ _ _ _ _ _ _ _ _ /s/Jenny Wood _ _ _ _ _ _ _ _ _ _
*Clerk.*

*Bail, $* **No Bail Warrant Pending Hearing**
_ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

GPO 863 525

2:24-cr-0311 TLN

<u>**United States v. Daniel Chartraw**</u>
**Penalties for Indictment**

**<u>COUNTS 1 through 12:</u>**

VIOLATION:        18 U.S.C. § 1343 – Wire Fraud

PENALTIES:        Maximum of 20 years in prison;
                  Fine of up to $250,000 or twice the gross gains or loss; and
                  Supervised release of 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**<u>FORFEITURE ALLEGATION:</u>**

VIOLATION:        18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

PENALTIES:        As stated in the charging document