ERIC GRANT
United States Attorney
JESSICA DELANEY
J. DOUGLAS HARMAN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:24-CR-000311 WBS |
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE – MOTION TO ADMIT OTHER ACTS EVIDENCE |
| v. | |
| DANIEL CHARTRAW, | |
| Defendant. | |

GOVERNMENT'S MOTION IN LIMINE – MOTION TO ADMIT OTHER ACTS EVIDENCE

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................................1

II.     FACTUAL BACKGROUND.................................................................................................1

        A.      The 2007 – 2011 Fraudulent Conduct ......................................................................1

        B.      The Charged Conduct ...............................................................................................2

        C.      Fraudulent Investment Involving J.S. ......................................................................3

        D.      Fraudulent Employment of Tom H. and Fraudulent Investment involving
                Trisha H. ...................................................................................................................4

        E.      Fraudulent Investment involving R.H.......................................................................5

        F.      Attempted Fraudulent Investment Opportunity for M.K. .........................................5

III.    LEGAL AUTHORITY .........................................................................................................5

        A.      Direct Evidence of Fraud Schemes ..........................................................................5

        B.      Federal Rule of Evidence 404 ..................................................................................6

IV.     ARGUMENT ........................................................................................................................8

        A.      Evidence of Defendant's Fraudulent Conduct Involving J.S., Tom H., Trisha
                H., R.H., and M.K. is Admissible as Direct Evidence or as Evidence
                Inextricably Intertwined with the Charged Scheme..................................................8

        B.      In the Alternative, the Evidence Related to J.S., Tom H., Trisha H., R.H., and
                M.K. is Admissible Under 404(b)..............................................................................9

                1.      Materiality......................................................................................................10

                2.      Remoteness .....................................................................................................14

                3.      Sufficiency of the Evidence ............................................................................16

                4.      Similarities .....................................................................................................17

                5.      Probative and Not Unfairly Prejudicial..........................................................17

        C.      Evidence of Defendant's previous fraud is admissible under 404(b) .............................18

                i.      Materiality......................................................................................................18

                ii.     Remoteness .....................................................................................................19

                iii.    Sufficiency of the Evidence and Similarity .........................................................19

D.    Evidence of Defendant's Prior Fraud Offense is Admissible Under Rule 609 ................20

V.    CONCLUSION.................................................................................................................20

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Huddleston v. United States*,
485 U.S. 681 (1988)............................................................................................... 7, 16

*United States v. Adams*,
401 F.3d 886 (8th Cir. 2005) ...................................................................................... 15

*United States v. Ayers*,
924 F.2d 1468 (9th Cir. 1991) ...................................................................................... 7

*United States v. Blitz*,
151 F.3d 1002 (9th Cir. 1998) ...................................................................................... 7

*United States v. Cox*,
963 F.3d 915 (9th Cir. 2020) ................................................................................... 7, 10

*United States v. Cruz-Garcia*,
344 F.3d 951 (9th Cir. 2003) ...................................................................................... 17

*United States v. Curtin*,
489 F.3d 935 (9th Cir. 2007) ..................................................................................... 7, 8

*United States v. Decinces*,
808 F.3d 785 (9th Cir. 2015) ........................................................................................ 8

*United States v. Frazier*,
280 F.3d 835 (8th Cir. 2002) ...................................................................................... 15

*United States v. Hadley*,
918 F.2d 848 (9th Cir. 1990) ................................................................................. 14, 15

*United States v. Haischer*,
780 F.3d 1277 (9th Cir. 2015) .................................................................................... 17

*United States v. Henderickson*,
2023 WL 5453234 (9th Cir. Aug. 24, 2023)................................................................ 15

*United States v. Hinton*,
31 F.3d 817 (9th Cir. 1994) ........................................................................................ 16

*United States v. Johnson*,
132 F.3d 1279 (9th Cir. 1997) ............................................................................... passim

*United States v. Lague*,
971 F.3d 1032 (9th Cir. 2020) .................................................................................... 16

*United States v. Lo*,
839 F.3d 777 (9th Cir. 2016) ................................................................................................ 6

*United States v. Loftis*,
843 F.3d 1173 (9th Cir. 2016) .......................................................................................... 6, 9

*United States v. Mundi*,
892 F.2d 817 (9th Cir. 1989) ................................................................................................ 6

*United States v. O'Brien*,
131 F.3d 1428 (10th Cir. 1997) ............................................................................................ 6

*United States v. Parker*,
549 F.2d 1217 (9th Cir. 1977) .............................................................................................. 7

*United States v. Ramirez-Jiminez*,
967 F.2d 1321 (9th Cir. 1992) ................................................................................... 7, 8, 17

*United States v. Rizk*,
660 F.3d 1125 (9th Cir. 2011) .............................................................................................. 6

*United States v. Rochelle*,
131 F.3d 150 (9th Cir. 1997) ......................................................................................... 8, 20

*United States v. Ross*,
886 F.2d 264 (9th Cir. 1989) .............................................................................................. 15

*United States v. Sayakhom*,
186 F.3d 929 (9th Cir. 1999) ................................................................................................ 6

*United States v. Simas*,
937 F.2d 459 (9th Cir. 1991) ................................................................................................ 7

*United States v. Spillone*,
879 F.2d 514 (9th Cir.1989) ......................................................................................... 15, 19

*United States v. Tsinnijinnie*,
91 F.3d 1285 (9th Cir. 1996) ................................................................................................ 7

*United States v. Verduzco*,
373 F.3d 1022 (9th Cir. 2004) .............................................................................................. 7

*United States v. Vo*,
413 F.3d 1010 (9th Cir. 2005) ............................................................................................ 15

*Zafiro v. United States*,
506 U.S. 534 (1993) ............................................................................................................ 17

GOVERNMENT MOTION TO ADMIT                iv

## STATUTES

18 U.S.C. § 1343............................................................................................................ 20

## RULES

Fed. R. Evid. 403 ............................................................................................................ 8

Fed. R. Evid. 404(b)................................................................................................. 6, 9, 20

Fed. R. Evid. 404(b)(1)-(2) ............................................................................................ 7

Fed. R. Evid. 609(a)(2) ................................................................................................. 20

Fed. R. Evid. 609(b)(1) ................................................................................................... 8

ERIC GRANT
United States Attorney
JESSICA DELANEY
J. DOUGLAS HARMAN
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900


Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:24-CR-00311 WBS |
| Plaintiff, | GOVERNMENT'S MOTION TO ADMIT OTHER ACTS EVIDENCE |
| v. | |
| DANIEL CHARTRAW, | |
| Defendant. | |

## I.    INTRODUCTION

The government hereby seeks to: (1) admit evidence of Defendant Daniel Chartraw's investment fraud scheme committed from 2007 - 2011; (2) introduce evidence of additional fraudulent transactions caused by Defendant in the course of the scheme; and (3) introduce evidence of fraudulent conduct involving Defendant's purported business partners in TDA Global and Crypto-Pal.

In addition, the government hereby presents notice of its intent to admit evidence of Defendant's prior federal fraud conviction pursuant to Federal Rule of Evidence 609 in the event that Defendant elects to testify at trial or to otherwise put his character at issue.

## II.    FACTUAL BACKGROUND

### A.    The 2007 – 2011 Fraudulent Conduct

Defendant engaged in a series of fraud schemes spanning the timeframe from 2007-2011.  *See* criminal case no. 2:12-cr-00184-MCE, ECF 11 (the indictment, attached as Exhibit 1).  As part of the

GOVERNMENT MOTION TO ADMIT                                    1

scheme, he claimed to own companies that did not exist, and purported to own real companies that he did not, in fact, have an ownership interest in.

As a result of his fraudulent activities, he was indicted by a grand jury on May 17, 2012. On January 24, 2013, he pleaded guilty to one count of the indictment, pursuant to a plea offer. 2:12-CR-00184-MCE, ECFs 27, 30, and attached Exhibit 2. The factual basis for his plea, which he personally signed, stated that he engaged in an investment fraud scheme to obtain money from investors by making various false and fraudulent statements, including inducing people to invest in mines, mining and refinery equipment, oil commodities, precious metals "concentrate," and multi-million dollar certificates of deposit in a bank "trading program." Ex. A. In one instance, Defendant represented that he would sell a victim tons of "dore bars" which could be refined to extract $6 – 9 million worth of precious metals. Ex. 1. In fact, Defendant did not have access to any "dore bars" and diverted the investors' money for his own use.

In addition, Person-2 and Person-3, as alleged in the indictment, were also associated with Defendant's earlier scheme, which resulted in a conviction. There, they were identified by Defendant as an officer / director of a company that he purported to own.

On August 29, 2013, Defendant was sentenced to 57 months of confinement and restitution in the amount of $2,830,698. ECF 38. The final judgement and commitment was signed on September 12, 2013. ECF 40.

## B.    The Charged Conduct

On November 21, 2024, Defendant was indicted by a grand jury sitting in the Eastern District of California on 12 counts of wire fraud. ECF 1. The indictment charges that Defendant created a series of companies, including TDA Global ("TDA") and Crypto-Pal, LLC ("Crypto-Pal"). TDA acted as a parent, or umbrella company, over several of Defendant's fraudulent ventures, including Crypto-Pal, along with a fraudulent real estate company and other brands. Crypto-Pal was allegedly a company that managed crypto-currency investment trading. Crypto-Pal asserted that it had a proprietary algorithm which would result in guaranteed high-yield investments. Defendant recruited investors to join by investing money directly into Crypto-Pal in exchange for equity in the company. Later, he recruited investors to invest their money using the purported algorithm.

GOVERNMENT MOTION TO ADMIT

2

The indictment further charges that Defendant worked with several other individuals to incorporate the fraudulent companies and to open bank accounts and computer accounts under the company's name. Defendant and others solicited business contacts to join Crypto-Pal as start-up investors. For example, Person-1, a longtime friend of Defendant's, operated as the "CEO" of the various companies. Person-1, unlike Defendant, has no criminal history. Defendant informed potential investors that he was working with a brilliant expatriate who had developed a cryptocurrency algorithm that resulted in high-yield returns. At trial, the government anticipates establishing that the "brilliant expatriate" was in fact a Mexican national who met Defendant while they both served federal sentences in the Bureau of Prisons.

The indictment alleges that Defendant represented to start-up investors that they would receive equity in the company; that they had a guaranteed return on their investment; and that the investment would be used solely to develop additional technology. Instead of using the money as promised, Defendant diverted the funds for his own personal use, and for the use of his friends and family.

The indictment further alleges that Defendant solicited additional individuals to invest their own money using Crypto-Pal and TDA's proprietary algorithm. While initially an algorithm existed, at no time did it result in the returns that Defendant represented to investors. Here, Defendant represented to investors that their money would be used solely for cryptocurrency trading. Regardless of the relative quality of any algorithm, Defendant did not apply a cryptocurrency trading algorithm bot to any of the money, as guaranteed to the investors.

The indictment then alleges 12 separate wire counts involving fraud perpetuated on five separate investor-victims. The indictment charges that the scheme began at some time before March 2, 2021, and continued through in or about February, 2022.

The case is set for trial on April 27, 2026.

## C.     Fraudulent Investment Involving J.S.

In the spring of 2022, J.S. was looking to obtain a line of credit. A friend introduced him to Defendant, based upon that friend's belief that Defendant could extend J.S. a line of credit. Defendant agreed to extend J.S. a line of credit with the promise of partial ownership of a National Basketball

Association (NBA) team in Las Vegas.[1]  However, before receiving any rights to ownership in the NBA scheme, Defendant encouraged J.S. to invest his own money with TDA and also recruit additional investors.  Defendant represented that TDA was a cryptocurrency exchange that had a special algorithm that resulted in huge cryptocurrency returns – resulting in an approximately 300% return on investment.  Defendant communicated with J.S. about the deal through in-person meetings, phone, and email, using the same email addresses that he used throughout the charged fraud scheme.

As a result of the promises made by Defendant, J.S. wired approximately $482,000 of value in bitcoin to cryptocurrency wallets under Defendant's control.  Defendant guaranteed J.S. would receive $1.5 million in bitcoin in return.  Instead, Defendant converted the money to his personal use and that of his associates, and did not invest it as promised.

**D.**        **Fraudulent Employment of Tom H. and Fraudulent Investment involving Trisha H.**

In the fall of 2021, Trisha H. met Defendant.  Defendant explained that he owned a company called TDA Global and that he was looking for new investors.  He explained that the business involved connecting different businesses over the blockchain network.  Trisha H. decided to invest $50,000 in exchange for what Defendant represented was a 5% stake in TDA Global.

Meanwhile, her husband, Tom H., worked in cyber-security and was interested in the venture.  Defendant offered him a job with TDA and invited him to be the head of Research and Development.  Tom H. worked on improving the company's infrastructure, including building out communications for the fledgling company.  He therefore quit his former job and entered into an employment agreement with Defendant and TDA Global.  However, whenever he tried to meet with Defendant about the business and his employment agreement, Defendant would make excuses about why he couldn't pay Tom H. or meet to discuss the business.  Tom H. never received any salary or other payment for his work with TDA.

---

[1] Defendant was involved with Jackie Robinson, a former NBA player and the owner of "Dribble Dunk LLC" which was soliciting investors for an NBA team and arena in Las Vegas.  Dribble Dunk is the defendant in several civil fraud suits related to that fraud.  *See* Velotta Richard N., "Developer of failed Strip All Net Arena project sued by investors," <u>Las Vegas Review-Journal</u>, at https://www.reviewjournal.com/business/casinos-gaming/developer-of-failed-strip-all-net-arena-project-sued-by-investors-3227528/, last viewed March 10, 2026.  The government does not seek to introduce evidence of Defendant's involvement in the Las Vegas fraud scheme at trial.

GOVERNMENT MOTION TO ADMIT                    4

At some point, Defendant asked Tom H. and Trisha H. for money to pay his bills because the business was doing so poorly. In summer 2022, Tom H. and Trisha H. realized that Defendant was never going to honor his promises to them about the business. They pressured Defendant to return the $50,000 investment.

Based upon financial tracing, federal investigators have determined that Defendant paid them back using money obtained from investor-victim J.S.'s bitcoin investment.

### E.    Fraudulent Investment involving R.H.

R.H. knew Defendant before his incarceration in 2013 for his federal fraud charges, discussed above. After Defendant was released, he told R.H. that he was starting a new company called TDA Global and offered R.H. equity in the company, in gratitude for her helping watch his children while he was in prison. R.H. invested $8,000 in the company. Defendant also asked R.H. to work for him and the company. R.H. worked for Defendant and his various businesses from November 2022 through March 2023. For her work, she received only a few thousand dollars to pay her bills – she did not receive a regular paycheck. R.H. never received any return on her investment in the company.

### F.    Attempted Fraudulent Investment Opportunity for M.K.

M.K. met Defendant through his ex-girlfriend, who was a friend of hers. In or around October 2021, Defendant asked her if she would invest $250,000 in his company, TDA Global. He explained that TDA Global was a company that distributed aviation fuel and distributed to companies such as JetBlue. In a later conversation with M.K., Defendant stated that TDA Global was the sole aviation fuel distributor for Delta Airlines. He represented that a $250,000 investment in TDA Global would result in equity in the company and would pay out approximately $1 million. Defendant represented that Person-1 was the CEO of TDA Global. Defendant also sent M.K. a company Welcome Packet and an investment plan. The investment plan he sent her was identical to the one sent to Investor-Victim-5.

## III.    LEGAL AUTHORITY

### A.    Direct Evidence of Fraud Schemes

The first element that the government needs to prove in a case involving mail or wire fraud is that there was a scheme to defraud. Ninth Cir. Model Jury Inst. 11.1; *see also United States v. Jinian*, 725, F.3d 954, 960 (9th Cir. 2013). The second element, which is the "charged transaction" requires

GOVERNMENT MOTION TO ADMIT                    5

proof of the use of a wire or mailing to execute the scheme.  *Id.*  Evidence of wire transactions that are not charged as separate counts are still admissible in a wire fraud case, however, to prove the first element; the scheme to defraud.  *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016).  Additional victims or wire transactions do not, then, fall under the analysis required by Fed. R. Evid. 404(b).  *Id.*

The Ninth Circuit has imputed the caselaw that applies to conspiracies to schemes – just as it is well settled that the government "may submit proof on the full scope of the conspiracy. . .it is not limited in its proof to the overt acts alleged in the indictment," so, too, the government may introduce evidence of the "fraudulent scheme as a whole. . . including additional execution of the scheme that were not specifically charged."  *Compare United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011) *and United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016).

Even if the Court does not find that certain uncharged transactions and uncharged victims are not direct evidence of the scheme, the Court can look to whether the evidence is "inextricably intertwined" with the charged offense such that it need not meet the requirements of Rule 404(b).  The mere fact that an act is outside the charged timeframe of an indictment does not, alone, mean that it is not intrinsically intertwined with the charged conspiracy.  *United States v. O'Brien*, 131 F.3d 1428, 1432 (10th Cir. 1997) (evidence of acts consistent with the conspiracy but occurring outside the timeframe of the alleged conspiracy intrinsically intertwined).  In the context of a fraud scheme, uncharged transactions that fall under an overall scheme are inextricably intertwined with the charged offenses.  *United States v. Mundi*, 892 F.2d 817, 820 (9th Cir. 1989).

For example, in *United States v. Sayakhom*, a defendant was charged with mail fraud resulting from fraudulent life insurance products sold through a single business entity.  186 F.3d 929, 933 (9th Cir. 1999).  The fraudulent business entity that was the source of the indictment was closed down, and the defendant then began working through a second business entity to perpetuate the same basic fraud.  Although the second business entity was not charged in the indictment, the court permitted admission because it was inextricably intertwined with the indicted crimes.  *Id.* at 937-938.

### B.     Federal Rule of Evidence 404

Rule 404(b) provides that evidence of any other crime is not admissible to prove a person's

character, but may be admissible to prove another purpose, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *See* Fed. R. Evid. 404(b)(1)-(2).  It is a "rule of inclusion," meaning that evidence of other crimes or acts is admissible "except where it tends to prove *only* criminal disposition." *United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991) (emphasis in original); *see also United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc) (holding that if 404(b) evidence serves one of the purposes set forth in the rule, the only basis for excluding the evidence is when admission would violate Rule 403).  "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988).

The Ninth Circuit uses a four-part test to determine whether evidence may be admitted under Rule 404(b): "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged."  *United States v. Cox*, 963 F.3d 915, 924 (9th Cir. 2020).  With respect to the fourth prong of the test, the other act must be similar to the charged offense if offered to prove intent, or identity, *modus operandi,* or absence of mistake or accident, but need not be similar if offered to prove knowledge as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence. *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1326 (9th Cir. 1992)

The United States also has the burden of demonstrating that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.  *United States v. Tsinnijinnie*, 91 F.3d 1285, 1289 (9th Cir. 1996) (citation omitted); *see also United States v. Verduzco*, 373 F.3d 1022, 1026-1027 (9th Cir. 2004).  The Ninth Circuit has repeatedly instructed that all evidence "unfavorable" to a defendant is, by definition "prejudicial," but that does not mean it is inadmissible under Rule 403.  *See United States v. Blitz*, 151 F.3d 1002, 1009 (9th Cir. 1998); *United States v. Simas*, 937 F.2d 459, 464 (9th Cir. 1991).  Indeed, the "best evidence" often is "highly prejudicial." *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977).  Rather, "unfair prejudice is measured by the extent to which the testimony makes conviction more likely because it provokes an emotional response in the jury or

otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *Ramirez-Jiminez*, 967 F.2d at 1327 (citations and internal quotations omitted); *see also* Fed. R. Evid. 403 Adv. Comm. Note (evidence that is unfairly prejudicial is that which causes "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

Ultimately, where the evidence meets the test under 404(b), it is error to exclude it unless the district court finds that the probative value is substantially outweighed by any countervailing undue prejudice. *See United States v. Decinces*, 808 F.3d 785, 791 (9th Cir. 2015) (reversing exclusion of prosecution 404(b) evidence). So long as the evidence is offered for a proper purpose, such as to prove intent, the district court is accorded wide discretion in deciding whether to admit the evidence, and the test for admissibility is one of relevance. *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997) (internal citations omitted). Finally, the government may offer this evidence in its case-in-chief in anticipation of an expected aspect of the defense. *Curtin*, 489 F.3d at 940.

## II.     Federal Rule of Evidence 609

Federal Rule of Evidence 609 allows the government to impeach a criminal defendant with a prior felony conviction. Fed. R. Evid. § 609(a). If the elements of the prior crime required proving—or the witness's admitting—a dishonest act or false statement, the evidence <u>must</u> be admitted. Fed. R. Evid. § 609(a)(2). Convictions for wire fraud are admissible under this rule without any balancing analysis. *See United States v. Rochelle*, 131 F.3d 150 (9th Cir. 1997). However, if more than ten years have passed since the witness's conviction or release from confinement, whichever is later, the evidence is only admitted if the court finds the evidence's probative value substantially outweighs prejudicial effect. Fed. R. Evid. 609(b)(1).

## IV.     ARGUMENT

### A.     Evidence of Defendant's Fraudulent Conduct Involving J.S., Tom H., Trisha H., R.H., and M.K. is Admissible as Direct Evidence or as Evidence Inextricably Intertwined with the Charged Scheme

Evidence of additional transactions of fraud involving J.S., Tom H., Trisha H., R.H, and M.K. is admissible as part of the overall scheme. Tom H. and R.H. were purported employees of TDA Global, the company through which Defendant executed the scheme charged in the indictment. Defendant made

the same types of promises to them that he made to the early investor-victims charged in the indictment—that in exchange for their work and investment, they would receive equity in the company. They will be providing direct testimony on the organization of TDA Global and Defendant's role within it.  However, in order to explain how they became involved in the company, it is necessary for them to describe the fraudulent promises made to them.  This evidence is direct evidence of Defendant's scheme to defraud investor-victims by lying to convince them to invest in his companies, TDA Global and Crypto-Pal, LLC.

The fraudulent investment scheme that was perpetuated on Trisha H., J.S., and M.K. was also part and parcel of the scheme.  Trisha and J.S. were induced to invest in TDA Global, and were told about the proprietary algorithm that would result in high-yield returns on investments—the same scheme charged in the indictment, and the same company charged in the indictment.  M.K. was encouraged to invest in TDA Global, and while she was told that it was an aviation fuel distributor, the same promises of receiving a 300% return on her investment was made, a promise for equity, and the same materials were provided to her to induce her to part with her money as was given to Victim-Investor-3.  These schemes constitute additional, though uncharged, transactions of the scheme.  As in *Loftis*, the fact that the victims and the fraudulent transfers were not charged does not detract from the fact that they are additional executions of the scheme, and therefore constitute direct evidence of the scheme to defraud. *See* 843 F.3d at 1177.

**B.    In the Alternative, the Evidence Related to J.S., Tom H., Trisha H., R.H., and M.K. is Admissible Under 404(b)**

Even if this Court finds that such evidence does not constitute direct evidence of the fraud scheme, and finds that the evidence is not inextricably intertwined with the charged fraud scheme, the evidence is also admissible pursuant to Fed. R. Evid. 404(b).  The evidence is admissible to prove intent, motive, opportunity, knowledge, preparation, plan, *modus operandi*, and absence of mistake. Importantly, one of the elements that the government must prove in a wire fraud scheme is the intent to defraud.  Evidence of other examples, at different times, of Defendant's perpetuation of fraud is illustrative of the fact that he intended to defraud the charged investor-victims, and that this was a deliberate, calculated scheme, and not merely an instance of a bad businessman failing to execute a

GOVERNMENT MOTION TO ADMIT

9

legitimate business. The fact that Defendant failed to pay his own employees is also evidence of his knowledge that the business was failing, at a time when he continued to falsely promise investors returns and to guarantee their investments were safe and flourishing.

As previously noted, the Ninth Circuit considers four factors when weighing the admission of evidence under rule 404(b): (1) materiality, (2) remoteness, (3) sufficiency, and (4) similarity, in certain cases. *Cox*, 963 F.3d at 924. All four factors weigh in favor of admission in this case, as further discussed below. Additionally, the evidence is not unfairly prejudicial to the Defendant.

### 1. **Materiality**

Evidence of Defendant's fraudulent conduct as it relates to Tom H., Trisha H., JS., R.H., and M.K. is material to show intent, preparation, plan, knowledge, and absence of mistake. The indictment alleges that Defendant was involved in the creation of TDA Global and Crypto-Pal, two companies that interchangeably offered investors access to a proprietary cryptocurrency algorithm capable of conducting high-yield transactions. The United States must prove both a scheme to defraud and an intent to defraud – and to thus necessarily disprove that the failure to return investors' money or to properly invest it was due to negligence or being a poor businessman. Evidence of Defendant's fraudulent conduct toward his own employees, and the consistent fraudulent misrepresentations made to other investor-victims above and beyond those charged in the indictment, is material to prove intent, preparation and plan. Furthermore, representations made to Tom H. and Trisha H., in particular, about the poor performance of the company, is relevant to prove knowledge and absence of mistake, as despite this evidence of Defendant's knowledge that the algorithm did not work, he continued to represent to investor-victims that it worked and that it would result in high-yields investments. For each of the other acts discussed below, their significant material similarities to the changed conduct militates in favor of admission under Rule 404(b).

### a. Fraud related to R.H.

Defendant represented to R.H. that, with a minor contribution from her, she could receive equity in the TDA Global company. He accepted a cash contribution from her.

Defendant began working with R.H. in around November 2022. The timing and similarity demonstrate Defendant's ongoing fraudulent conduct even after the charged offenses. At the time he

defrauded R.H., Defendant had already diverted the funds from Investor-Victim-1 and Investor-Victim 2's accounts, which were intended to be applied as equity in the company.  He had also converted Investor-Victims-3 through 5's intended investments to his own use.  Proof that Defendant was continuing his fraudulent promises of equity a year and a half later tends to show that his actions relating to the investor-victims mentioned in the indictment were not simply negligent mistakes made by a bad businessmen, but were knowing acts of fraud, and that Defendant intended to defraud investor-victims using TDA Global to finance his personal life.

b.  Fraud Related to J.S.

J.S. met Defendant in the early spring of 2022 – months after the final events charged in the indictment.  Defendant told J.S. about his company, TDA Global, and how it had a cryptocurrency algorithm which resulted in high-yield investments.  At Defendant's urging, and because he was promised equity in an NBA basketball team and an investment return of $1.5 million, J.S. transferred approximately $482,000 in cryptocurrency to a cryptocurrency wallet under Defendant's control.  After receiving the funds, Defendant cut off all contact with J.S., and refused to return his principle.

J.S. communicated with Defendant through the email account leon@tdaglobalsystems.com.[2] Notably, the email account used the an identifier of Leon, rather than Defendant's own name, Dan.  This reflects the portion of the scheme whereby Defendant distanced himself from involvement in the fraud by using email accounts belonging instead to his father.

In addition, although Defendant was the primary person who met with and discussed the investment with J.S., other individuals signed the documents, demonstrating again that Defendant attempted to distance himself from the fraud.

However, financial analysts employed by the FBI reviewed financial documentation and were able to determine that J.S.'s investment went directly to a pair of Coinbase wallets controlled by Defendant.  From that account, almost $90,000 was converted to fiat currency and transferred to Defendant's banking account and debit card account.  Approximately $30,000 was diverted to cryptocurrency wallets in his father's name.  A little over $80,000 was sent to cryptocurrency wallets in

---

[2] This email account and name correspond to Person-2, alleged in he indictment to be listed in incorporation documents, and whose address was used as a mailing address for Crypto-Pal.

GOVERNMENT MOTION TO ADMIT

11

the name of Defendant's then-girlfriend and were then converted to fiat currency and transferred to her banking accounts. A little over $50,000 was sent to Tom H., presumably to repay his wife's investment into the company.

This evidence is relevant to show Defendant's intent to defraud earlier investors. It also shows Defendant's *modus operandi* in failing to respond to investor-victims after absconding with their money. For instance, after receiving a significant bitcoin transfer from Investor-Victim-5's crypto.com account, Defendant also abruptly ceased communicating with her. It also demonstrates the way that Defendant, after obtaining victims' money, attempted to distance himself from the transactions by redirecting victims to other members of the TDA and Crypto-Pal companies. For instance, with both J.S. and Victim-Investor 3, Defendant directed them to discuss their concerns with Person 1, who was generally referred to as the CEO of TDA. Defendant did so despite being the individual who benefited from the fraudulent conversions of the money. Evidence that Defendant continued to perpetuate the fraud helps to prove his intent to defraud, his knowledge that his representations were false at the time that they were made, his *modus operandi*, and helps to disprove any defense that his earlier actions were the result of mistake, or that some other bad actor was responsible for the fraud.

### c. Fraud related to Trisha H.

Trisha H. signed an agreement to invest $50,000 into TDA Global, signed a purchase agreement, and transferred $50,000 to Defendant's mother's banking account on November 15, 2021, and November 17, 2021, within the timeframe alleged in the indictment for this same scheme. Although Defendant was the one who informed Trisha H. about the investment opportunity and encouraged her to make an investment, the documents signed in support of the transaction were digitally signed by, purportedly, Defendant's father. Trisha H. was introduced to Defendant through his then-girlfriend. This is similar to, in the same timeframe, the way in which Victim-Investor-5 invested in Defendant's company after having been introduced to Defendant through his mother. Similarly, this is another instance of Defendant using his father's name to distance himself from his own fraudulent conduct.

Furthermore, despite the fact that TDA Global and Crypto-Pal both had business banking accounts, Defendant directed Trisha H. to transfer the money to a banking account in his mother's name. From there, the day after the transactions, $20,000 was transferred to a different banking account in the

name of Fall Line Ventures, and not to the bank accounts associated with either TDA or Crypto-Pal. Defendant's mother's bank account also has, in general, a large number of transfers to a bank account in the name of both of Defendant's parents, and a large number of Zelle transfers to Defendant.

According to Trisha H., when she realized that the TDA Global company appeared to be fraudulent, or at best was never going to generate income, she began asking not only Defendant, but also Defendant's girlfriend to return the money. Eventually, the money was returned, but appears to have been returned using the money that J.S. invested in the company.

This evidence is relevant and material to show Defendant's intent, motive and lack of mistake. Trisha H. invested her money after Defendant had already squandered Investor-Victim-1 and Investor-Victim-2's investments. This tends to show that his misuse of Investor-Victim-1 and Investor-Victim-2's investments was not the result of mistake, or negligence, but was instead part and parcel of an evolving scheme to defraud, and demonstrates that his intent with both the earlier investors and the later investors, was, in fact, to defraud. The fraud occurred after the fraudulent divestment of funds for Investor-Victim-1 and Investor-Victim 2. The fact that Defendant continued to make the same fraudulent states to engage in the practice of obtaining funds in exchange for purported "equity" after he was already aware that the company was unable to get off the ground using investment funds is proof that Defendant had no intent earlier to properly fund the company and to invest money as promised.

d. <u>Fraud related to Tom H.</u>

Finally, evidence that Defendant fraudulently induced Tom H. to enter into an employment agreement is admissible to show intent, motive, knowledge, preparation, plan, and absence of mistake.

Tom H. worked closely with other members of the TDA Global company, but never received any compensation. When Tom H. asked Defendant why he wasn't being paid, Defendant used various excuse such as "funds being stuck in compliance" or stated that his father was sick and he was preoccupied with personal affairs. Eventually, Defendant asked for a personal loan from Tom H. and Trisha H., because he claimed that the company was doing so poorly. Because they considered Defendant a friend, Tom H. and Trisha H. loaned him money. At that point, he stopped communicating with them for several months, until he invited them to a birthday party in Malibu, California. The extravagance of the party appeared at odds with Defendant claiming that the business was in trouble.

Additionally, Defendant began sending them bank statements appearing to show that the company had grown.

Defendant frequently represented to Tom H. that he was unable to meet and discuss payment because of the bad health of his father, and made other lulling statements which resulted in Tom H. delaying any outcry.  This tends to show Defendant's knowledge that by emphasizing his personal struggles he could delay any consequences from investor-victims, including them reporting the fraud to law enforcement authorities.  He made similar claims to Investor-Victim 3, when she began pressing him to return her investment.  The similarity of Defendant's false story to the charged Investor-Victim and Tom H. demonstrate both Defendant's knowledge that of his lies and his intent to defraud the charged victims.

The circumstances surrounding Tom H.'s employment tend to show Defendant's motive, intent, preparation, and plan.  This evidence demonstrates how Defendant used Crypto-Pal, TDA Global, and the various individuals working for the companies to add an air of legitimacy to his fraud, and to distract from his own involvement.   For example, in the scope of his "employment," Tom H. met with potential investors, including J.S.  Unlike Defendant, Tom H. did not have any fraud convictions.

e.    Attempted fraud related to M.K.

Evidence that Defendant attempted to induce M.K. to invest in TDA Global is relevant to prove intent, motive, opportunity, *modus operandi,* and absence of mistake.  This offense happened right around the same time that Defendant was engaging with Investor-Victim-5 to invest funds in TDA Global, and the same paperwork was submitted to M.K.  The fact that Defendant was simultaneously advertising TDA Global as a cryptocurrency investment company and an aviation fuel distributor tends to show his intent to defraud, and the lack of a legitimate business purpose for the investment fraud scheme.

2.    **Remoteness**

The Ninth Circuit "has not identified a particular number of years after which past conduct becomes too remote," *Johnson*, 132 F.3d at 1283 (internal citations omitted), and has explicitly declined to adopt an inflexible rule regarding remoteness. *United States v. Hadley*, 918 F.2d 848, 851 (9th Cir. 1990). "Rather, [d]epending upon the theory of admissibility and the similarity of the acts ... some

GOVERNMENT MOTION TO ADMIT                    14

remote acts may be extremely probative and relevant." *Johnson*, 132 F.3d at 1283 (quoting *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir.1989)). Thus, if "[t]he prior act evidence in this case is sufficiently similar to the charged conduct" it may "render it probative despite the passage of time." *Id*.

In *Johnson*, a defendant's thirteen-year prior sexual contacts with teens were deemed admissible because the conduct was sufficiently similar to the charged conduct of transporting a minor with intent to engage in criminal sexual activity. Similarly, in *Spillone*, a defendant's more than ten-year-old conviction for making an extortionate extension of credit was deemed admissible because of the similarity to the charged conduct of using extortionate means to collect extensions of credit. *Spillone*, 879 F.2d at 519; *see also United States v. Henderickson*, 2023 WL 5453234, at *1 (9th Cir. Aug. 24, 2023) (Court did not abuse discretion in admitting two convictions that were seven and twelve years old, respectively, given the similarities in conduct); *United States v. Vo*, 413 F.3d 1010, 1019 (9th Cir. 2005) (same for thirteen-year-old drug convictions); *United States v. Ross*, 886 F.2d 264, 265 (9th Cir. 1989) (given the similarity of the offenses, the prior, thirteen-year-old act was not so remote as to require exclusion).  In short, case law makes clear that similarities of the conduct charged to the prior acts generally outweigh remoteness concerns.  *See Hadley*, 918 F.2d at 851 ("The similarity of the prior act to the offense charged outweighs concerns regarding its remoteness"); *see also United States v. Adams*, 401 F.3d 886 (8th Cir. 2005) (allowing evidence of convictions that were fifteen years prior to charged conduct); *United States v. Frazier*, 280 F.3d 835, 847 (8th Cir. 2002) (citing instances where 12, 13, and 17 years separated prior crimes found to be admissible) (internal citations omitted).

Here, the evidence of other acts of fraud associated with TDA Global are close in time to the charged offenses.  The fraud involving Tom H. and Trisha H., and the attempted fraud involving M.K. occurred during the charged timeframe.  The fraud involving J.S. occurred mere weeks after the charged timeframe.  And the fraud involving R.H. occurred less than a year after the charged timeframe.  All of the evidence of these "other acts" are extremely similar to the charged transactions – they involved the same fraudulent companies, the same investment pitches, and the same general business assertions. Therefore, the remoteness factor weighs in favor of admission under Fed. Rule Evid. 404(b).

### 3.    Sufficiency of the Evidence[3]

"[S]imilar act evidence is relevant ... if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Johnson*, 132 F.3d at 1283 (citing *Huddleston*, 485 U.S. at 689). This reliability threshold is not a high one, and the testimony of a single witness can be sufficient.  *Id.* (citing *United States v. Hinton*, 31 F.3d 817, 823 (9th Cir. 1994) ("[W]e are not persuaded that where a witness testifies as to the defendant's prior bad acts, the jury must be presented with evidence corroborating the witness' testimony to satisfy the low threshold required by [this] part ... of the test.") (internal citations omitted); *see also United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020) ("Under our low threshold test of sufficiency, the government need not prove Rule 404(b) evidence by a preponderance of the evidence… instead, the government need only lay a factual foundation from which a jury could reasonably conclude that [the defendant] committed the allegedly-similar bad acts, and that he possessed the requisite intent in committing those bad acts") (internal citations omitted).

This "low threshold" is easily met in this case.  To prove the fraud against R.H., the government will introduce the testimony of R.H., as well as supporting documents, including emails, showing that she was working for Defendant during the timeframe of the fraud.  To prove the fraud involving J.S., the government will introduce the testimony of J.S., as well as emails and text messages he exchanged with Defendant, and financial tracing evidence showing that the money he invested was diverted to Defendant and Defendant's associate's personal use.  To prove the fraud involving Tom H. and Trisha H., the government will introduce their testimony, the signed document Trisha H. signed relevant to her investment, and financial documents demonstrating the use of her funds and the repayment using funds from J.S.'s investment.  To prove the attempted fraud involving M.K., the government will introduce the testimony of M.K. and the emails sent from Defendant to M.K. to attempt to convince her to invest.

---

[3] Defendant has also been implicated in multiple other fraud schemes, that are dissimilar to the fraud scheme in the indictment.  For example, Defendant was implicated in a fraud involving Reno, Nevada company DTECH Ventures.  There, Defendant represented that he, Person 1, and Person 2 owned the company DTECH ventures and that they sought to purchase a hemp company and "money was not an option."  DTECH agreed to pay $75 million to purchase the company, acquired the company, and never paid the $75 million.  Defendant was also under investigation while incarcerated in the BOP for money-laundering.  Defendant and TDA Global were also addressed in a fraud suit filed in Delaware. *Lentz v. Mathias*, C.A. No .2022-0374-JTL.  The government does not intend to introduce any of this additional evidence of fraudulent conduct in its case in chief, but may introduce such evidence if Defendant puts at issue the Defendant's character.

GOVERNMENT MOTION TO ADMIT                          16

Therefore, the sufficiency element also favors admission.

### 4. **Similarities**

As discussed above, this factor is easily satisfied as well.  Even were the court to reject the government's position that these acts are direct evidence of the scheme and inextricably intertwined with the charged instances of fraud, the practical similarities between Defendants actions with respect to the charged individuals and those mentioned above are sufficiently similar to favor admission under rule 404(b).  As noted in the materiality discussion above, Defendant used the same companies (TDA and Crypto-Pal), offered the same materials to reassure victims, and used the same tactics to distance himself from the frauds in both the charged frauds and the other acts.  These similarities go to the heart of Defendant's scheme as charged.  Therefore, the similarities prong of the test strongly militates in favor of admission.

### 5. **Probative and Not Unfairly Prejudicial**

The evidence in question is also highly probative of knowledge, intent, motive, plan, opportunity, identity, and lack of mistake or accident. Conversely, the evidence is not unfairly prejudicial.  It is evidence that is directly relevant to the commission of the charged crimes, not extraneous or cumulative conduct that may unfairly evoke an emotional response from jurors "or otherwise…affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to [her] guilt or innocence." *Ramirez-Jiminez*, 967 F.2d at 1327.

Any prejudice to Defendant's case results from the legitimate probative force of the evidence, and as the Ninth Circuit has made clear, Rule 403 "excludes only evidence where the prejudice is…based on something *other* than its persuasive weight." *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003).  The evidence is not unduly inflammatory such that it would encourage the jury to convict on an improper basis—that is, a basis other than Defendant's guilt or innocence. *See United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015).  Stated differently, given the similarity with the charged conduct, there is no risk that the evidence will provoke a reaction any different from the reaction that evidence of her charged conduct will generate.  The evidence is not unfairly prejudicial and therefore should be admitted.  To the extent there is any risk of prejudice, that risk should be addressed through proper instruction, which "juries are presumed to follow." *Zafiro v. United States*, 506 U.S.

534, 540-41 (1993).

Furthermore, Tom H. and R.H. will be called as witnesses regardless, to testify about the general structure of TDA Global, the various actors, and the fact that it was never an established company. Evidence of financial tracing will be introduced, which will necessarily include evidence involving uncharged fraud involving Trisha H.  Because the evidence is so closely tied to the scheme, introduction of the evidence will not create any "mini-trial" or add to any confusion of the issues or waste of time for the jury.

C.      **Evidence of Defendant's previous fraud is admissible under 404(b)**

Defendant's prior conviction for operating a fraudulent investment scheme is also admissible under 404(b) to prove intent, motive, knowledge, and absence of mistake.  Once again, each element of the four-factor test weighs in favor of admission of this evidence.  Nor is evidence of the prior scheme unfairly prejudicial such that the evidence should be barred.

i.      **Materiality**

Defendant's previous fraud conviction involved Defendant claiming to have property which he did not have, soliciting investors, and then converting victim's investment funds for his own purposes. In a signed factual basis in support of his guilty plea,  Defendant admitted that he "engaged in a investment fraud scheme designed to obtain money from investors through materially false and fraudulent representations about a variety of investments, including, but not limited to, investments in mines, mining and refinery equipment, oil commodities, precious metals "concentrate," and multi-million dollar certificates of deposit in bank "trading programs."  He also admitted that he used some of the proceeds of his fraud to repay other victims.  Ex. A.

In particular, Defendant admitted to taking an investor on a tour of an Arizona refinery facility to support his fraudulent assertion that he could sell the victim "dore bars" which could be refined to extract $6-9 million in precious metals. Ex. A.  Although the victim toured an actual facility, Defendant had no association with it.  Ex. A.  After transferring $1 million to an escrow account, Defendant converted the money for his personal use and did not send any "dore bars" to the investor to refine.

As in the present case, Defendant admitted to working with others, including L.G. and J.H.

Such evidence is material to prove a lack of mistake in the present case.  For example, it

GOVERNMENT MOTION TO ADMIT                                                18

demonstrates that Defendant was aware of the lawlessness of soliciting investments and then converting the funds for personal use.  It is also evidence of Defendant's intent to defraud the investors in the current case and to defeat a theory of Defendant as a poor businessman.

It is also relevant and material to explain to a jury why Defendant continually tried to distance himself personally from the business of Crypto-Pal and TDA Global, for instances by using his father's email account and alias, and having others listed on company material as being the officers of the company.  For example, when one victim confronted Defendant about his federal conviction for fraud, Defendant falsely stated that he had no access to Crypto-Pal's banking accounts, and that another individual handled finances.  Defendant's actions to use others' names or claim that others were in charge of things was due to his knowledge that anyone who searched the internet for his name would locate his fraud conviction.

### ii.    Remoteness

Defendant's previous fraudulent actions occurred most recently in 2011.  Defendant was then incarcerated from 2012 through 2016, as a result of his fraudulent conduct.  The charged fraud scheme began in 2021, ten years after his previous fraud scheme, and less than five years after Defendant completed his prison term associated with the previous fraud scheme.  Furthermore, many of the individuals involved in the prior fraud scheme, including Person-1 and Person-2, were also implicated in the charged fraud scheme.  In *Spillone*, the Ninth Circuit identified cases from the 7th, 5th, and 8th Circuit in which prior "bad acts" were admitted even when they were over ten years old.  *See* 879 F.2d at 519.  As previously noted, strong similarities between acts may render a prior act probative despite the intervening passage of time.  *Johnson*, 132 F.3d at 1283.  Similar to *Spillone*, here the prior bad act was so similar to the currently charged scheme that the Court should admit it, even though it occurred over 10 years ago.

### iii.    Sufficiency of the Evidence and Similarity

As to the count of conviction, a jury can certainly find the evidence sufficient to find that Defendant committed the prior fraud offense, given that the government will introduce Defendant's own signed statement in which he admits to a factual basis.  Furthermore, a record of conviction supports the sufficiency of the count. To the extent that the government seeks to introduce other evidence from the

GOVERNMENT MOTION TO ADMIT    19

prior indictment, it will do so through the testimony of a victim-witness.

As discussed above, Defendant's previous fraud scheme was substantially similar to the present, whereby he solicited investments in non-existent companies, or those he did not own; used the legitimate business practices of others as a shield for his deceit; and converted investor funds to his personal use.

### D.    Evidence of Defendant's Prior Fraud Offense is Admissible Under Rule 609

Should Defendant elect to testify, or otherwise put his character at issue, the government should be permitted to impeach him with evidence of his prior convictions, as these convictions are highly probative of his truthfulness.

Defendant was previously convicted of wire fraud and was released from confinement in July 2016.  Wire fraud under 18 U.S.C. § 1343 has a maximum statutory punishment of 20 years confinement.  Wire fraud also has as an element that requires the making of false or fraudulent statements, pretenses, representations, or promises; and the defendant acted with the intent to defraud – that is, to deceive and cheat.

 Because less than 10 years have passed since Defendant's release from confinement and the crime involved proving a dishonest act or false statement, such evidence must be admitted under Fed. R. Evid. 609(a)(2), and balancing is unnecessary.  *Rochelle*, 131 F.3d 150.

### V.    CONCLUSION

For the foregoing reasons, the Court should grant the motion and permit the United States to admit evidence of Defendant's other victims in this scheme, and other wire transactions executed in furtherance of the scheme as direct evidence of the charged fraud scheme, or as evidence inextricably intertwined with the charged scheme.

In the alternative, such evidence is also admissible under Fed. R. Evid. 404(b) as it is probative as to Defendant's intent, absence of mistake, common plan and scheme, knowledge, preparation, and *modus operandi*.  Further, the Court should permit the United States to admit evidence of Defendant's prior fraud scheme in its case in chief under rule 404(b).

Finally, the Court should permit the United States to impeach Defendant with his prior wire fraud conviction pursuant to rule 609 in the event he testifies or otherwise places his character at issue.

Dated:  March 23, 2026

ERIC GRANT
United States Attorney

By:  /s/ JESSICA DELANEY
JESSICA DELANEY
J. DOUGLAS HARMAN
Assistant United States Attorneys