# Exhibit 2

BENJAMIN B. WAGNER
United States Attorney
MICHAEL D. ANDERSON
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700



**FILED**

JAN 24 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:12-cr-00184 MCE |
| Plaintiff, | **PLEA AGREEMENT** |
| v. | DATE: January 24, 2013 |
| DANIEL CHARTRAW, | TIME: 9:00 a.m. |
| Defendant. | COURT: Hon. Morrison C. England |

## I.

### INTRODUCTION

**A.   Scope of Agreement:**  The indictment in this case charges the defendant with 18 Counts of Wire Fraud in violation of 18 U.S.C. § 1343.  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory

1

authorities.

**B. Court Not a Party**: The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the Indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A. Guilty Plea**: The defendant will plead guilty to Count 9: Wire Fraud in violation of 18 U.S.C. § 1343. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing

recommendations.

If the defendant enters a guilty plea pursuant to this agreement, the defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States, even if he subsequently moves to withdraw his plea. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, only to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

**B. Restitution**: The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses.

Defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged from the periods of January 1, 2007 through November 31, 2011. The government estimates that the amount of restitution will be $2,606,448 to $3,639,448 dollars.

Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the Court.

**C. Fine:** The defendant reserves the right to argue at

3

sentencing that he is unable to pay a fine; however, he agrees to pay a fine if ordered by the court up to the statutory maximum.

**D.  Special Assessment:**  The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.  If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**E.  Violation of Plea Agreement by Defendant/Withdrawal of Plea:**

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein.  Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement.  The determination whether the defendant has violated the plea agreement will be under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right (1) to prosecute the defendant on any of the counts to which he/she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The

4

defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

**F.** **Asset Disclosure**: The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that this plea agreement is voidable at the option of the government if the defendant fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time.

5

## III.

## THE GOVERNMENT'S OBLIGATIONS

**A.   Dismissals:**  The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment.  The government also agrees not to reinstate any dismissed count except as provided in paragraphs II.A., II.F., VI.B., and VII.B. herein.

**B.   Recommendations:**

**1.   Incarceration Range:**  The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense as determined by the Court.

**2.   Acceptance of Responsibility:** The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**3.   Government's Obligations to the Court:**

The government will provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court.

6

The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.

## ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, **Count 9: Wire Fraud in violation of 18 U.S.C. § 1343:**

First, the defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

Fourth, the defendant used, or caused to be used, wire communication in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme.

The defendant fully understands the nature and elements of the crimes charged in the Indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

///

///

7

# V.

## MAXIMUM SENTENCE

**A.   Maximum Penalty:**  The maximum sentence that the Court can impose is 20 years of incarceration, a fine of $250,000, a 3 year period of supervised release and a special assessment of $100.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty or the dismissed counts.  The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.   Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

# VI.

## SENTENCING DETERMINATION

**A.   Statutory Authority:**  The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence.  The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines.  The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing

8

range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

**B.** **Stipulations Affecting Guideline Calculation:** The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1. **Base Offense Level:** 7 - USSG §2B1.1(a)(1)

2. **Specific Offense Characteristics:** +18 - USSG §2B1.1(b)(1)(J). The defendant caused losses to victims of his investment schemes, including relevant conduct, of between $2.5 million and $7 million. Specifically, the defendant caused losses of approximately $2,606,488 to $3,639,488, after accounting for any applicable credits against loss.

3. **Victim-related Adjustments:** +2 - USSG §2B1.1(b)(2)(A)(I). The offense involved ten or more victims.

4. **Adjusted Offense Level:** 27 based on the stipulations above.

5. **Acceptance of Responsibility:** See paragraph III(B)(2) above.

6. **Criminal History:** No stipulation.

7. **Sentencing Range:** Non-binding estimate: Assuming a Criminal History Category of II and acceptance of responsibility, the sentencing range would be 24/II = 57-71 months

9

**8.    Departures or Other Enhancements or Reductions**: The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references.  Both parties agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738 (2005).

The defendant also agrees that the application of the United States Sentencing Guidelines to his case results in a reasonable sentence and that the defendant will not request that the Court apply the sentencing factors under 18 U.S.C. § 3553 to arrive at a different sentence than that called for under the Sentencing Guidelines' advisory guideline range as determined by the Court.  The defendant acknowledges that if the defendant requests or suggests in any manner a different sentence than what is called for under the advisory guideline range as determined by the Court, the plea agreement is voidable at the option of the government.  The government, in its sole discretion, may withdraw from the plea agreement and continue with its prosecution of the defendant as if the parties had never entered into this plea agreement.

**VII.**

**WAIVERS**

**A.    Waiver of Constitutional Rights**:  The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena

10

witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B.   Waiver of Appeal and Collateral Attack:**   The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence.   The defendant agrees as part of his plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the top of the advisory sentencing guidelines range as calculated by the Court.   The defendant specifically gives up the right to appeal any order of restitution the Court may impose so long as it does not exceed the government's estimated restitution range as stated above.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case.   The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the conviction or sentence, except for non-waivable claims.

Notwithstanding the agreement in paragraph III.A. above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to

11

which the defendant is pleading guilty, the government shall have the rights set forth in Section II.F. herein.

**C.   Waiver of Attorneys' Fees and Costs:**  The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII.

### ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.

### APPROVALS AND SIGNATURES

**A.   Defense Counsel:**  I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED:  _____1/2~/1~_____          _____
                                   BENJAMIN GALLOWAY
                                   Attorney for Defendant

**B.   Defendant:**  I have read this plea agreement and carefully

12

reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this plea agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.  Finally, I am satisfied with the representation of my attorney in this case.

DATED: _____4/24/13_____      _____
                                  DANIEL CHARTRAW
                                  Defendant


     **C.  Attorney for United States**:  I accept and agree to this plea agreement on behalf of the government.

DATED:  __1/24/13__               BENJAMIN B. WAGNER
                                  United States Attorney


                            By: _____
                                  MICHAEL D. ANDERSON
                                  Assistant U.S. Attorney

13

**EXHIBIT "A"**

**Factual Basis for Plea**

Beginning no later than January 1, 2007, and continuing to at least November 31, 2011, defendant Daniel Chartraw engaged in a investment fraud scheme designed to obtain money from investors through materially false and fraudulent representations about a variety of investments, including, but not limited to, investments in mines, mining and refinery equipment, oil commodities, precious metals "concentrate," and multi-million dollar certificates of deposit in bank "trading programs." Between 20 and 49 individuals were defrauded in the course of this scheme. In some cases, Chartraw used portions of new victim money to repay portions of the money stolen from previous victims. After subtracting repayments to victims, Chartraw caused victim losses of between $2,606,448 and $3,639,448.

In one example of Chartraw's investment fraud scheme, Chartraw defrauded J.F.C. of $1 million by interposing himself in a transaction for dore bars between J.F.C. and a company called AZ Rock. Over the course of numerous phone and video conferences in 2010, Chartraw represented to J.F.C. and J.F.C.'s investors that Chartraw and L.G. were officers of AZ Rock. Chartraw told J.F.C. that AZ Rock would sell J.F.C. several tons of "dore bars," which Chartraw claimed could be refined to extract $6-9 million worth of precious metals.

In order to encourage J.F.C.'s purchase of the dore bars, in approximately October or November 2010, Chartraw and L.G. took J.F.C. on a tour of the AZ Rock facility in Arizona. At the facility, J.F.C. observed smelting furnaces and other equipment being used by AZ Rock employees to manufacture what Chartraw claimed were valuable dore bars. During the tour, Chartraw stated that he and L.G. were partners in the facility and had an ownership interest in the powder that was being used to manufacture the dore bars. In reality, Chartraw and L.G. did not have an ownership interest in AZ Rock or the dore bars, and through artifice, Chartraw and L.G. limited J.F.C.'s interaction with the true owners and managers of AZ Rock during the tour, thereby concealing the fraud.

Following the tour, J.F.C. and his investor partners agreed to invest $3 million in the purchase of dore bars. Pursuant to an agreement with Chartraw and L.G., J.F.C. transferred $1 million to an escrow account held in the name of AZ Rock at 1st National Title Insurance Agency in Utah as a down payment.

At this point, Chartraw and L.G. told J.F.C. that the dore bars had been shipped. However, only a relatively small amount of dore bars (containing little or no precious metals) were ever shipped to J.F.C.'s refining facility in Antwerp because AZ Rock never received payment. In fact, Chartraw and L.G. diverted the $1 million out of escrow and spent it on personal expenses.

Chartraw and L.G. did this by providing to 1st National a forged

A-1

"Letter of Introduction and Mandate Authority" purporting to be from AZ Rock. This letter stated that Chartraw was a "Principle/Partner" in AZ Rock, which was false. The letter also contained the defendant's true signature and the forged signature of the true owner of AZ Rock. Based on this letter, 1st National released the $1 million in escrow funds to accounts controlled by Chartraw and L.G., including $400,000 that was sent on November 22, 2010, using an interstate wire to an attorney client trust account maintained in the Eastern District of California by J.H. on behalf of Chartraw.

I, Daniel Chartraw, have carefully reviewed the above statement with my attorney. The facts described above are true and I adopt this Factual Basis for Plea as my own true statement.

DATED: _____          X _____
                                        DANIEL CHARTRAW
                                        Defendant

A-2